UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Tony Fisher,<br>  aka Kellie Rehanna,<br>  Plaintiff,<br><br>   V.<br>Federal Bureau Of Prisons<br>Jordan Hollingsworth<br>Warden Doe<br>Unit Doe<br>Ms. Fischer<br>Mr. Williams<br>N. Watkins Ward<br>Anna Morfe<br>Stacie D. Marantz-Tattersdi<br>individually and in their<br>official capacities,<br>  Defendants | COMPLAINT FOR DAMAGES<br>Civil Action No.-_____<br>(42 USC §1983)<br>(Bivens Vs Six Unknown Federal<br>Narcotics Agents, 403 US 388,396,<br>29 LED 2d 619,626,91 S Ct 1999(1971))<br>(5 USC §551-9 of the "Administrative<br>Procedure Act")<br>(28 USC §2201 & 2202)<br>(28 USC §1331)<br>(28 USC §1331 and §1343(a)(1),(4)) |

## I JURISDICTION

1. This is a civil action authorized by 42 USC §1983 to redress the deprivation of rights under the color of Federal Law secured by the Constitution of the United States through the Eighth Amendment Cruel and Unusual Punishment Clause. - Farmer Vs Brennan, 511 US 825,128 LED 2d 811,114 S Ct 1970(1994); Helling Vs McKinney, 509 US 25,125 LED 2d 22,113 S Ct 2475(1993); Wilson Vs Seiter, 501 US 294,115 LED 2d 271,111 S Ct 2321(1991); Paton Vs LaPrade, 524 F2d 862, 871(3d Cir,1975).

2. This civil action under 42 USC §1983 is applicable to the Plaintiff who is a Federal Prisoner within the Federal Bureau of Prisons (FBOP) through Bivens Vs Six Unknown Federal Narcotics Agents, 403 US 388,396,29 LED 2d 619,626,91 S Ct 1999(1971) - Farmer, supra; Paton, supra.

3. This civil action is authorized through 5 USC §551-9 of the "Administrative Procedure Act."

4. Plaintiff seeks declaratory and injunctive relief pursuant to 28 USC §2201 & 2202 and under 28 USC §1331.

5. This court has subject matter jurisdiction of this civil action under 28 USC §1331 and §1343(a)(1),(4).

## II VENUE

6. The United States District Court for the District of New Jersey is an appropriate venue under 28 USC §1391(b)(2) because it is where the events giving rise to this claim occurred.

## III PLAINTIFF

7. Plaintiff, Tony Fisher, is a transgender female and therefore request that the court use the feminine pronoun along with her feminine name, Kellie Rehanna.

-1-

8. Plaintiff at all times during the events mentioned herein between July 2, 2013 through September 10, 2013 was housed at FCI Ft Dix New Jersey as a Federal Prisoner. From September 27, 2013 through June 26, 2015 Plaintiff was housed at FCI Forrest City in Arkansas. She was transfered to FCI Elkton in Lisbon, Ohio on July 7, 2015 where she is still housed today. It should be noted that all gaps in housing dates is due to the FBOP transfer (in-transit) process.

## IV DEFENDANT(S)

9. Defendant Jordan Hollingsworth was the Warden of FCI Ft Dix and was responsible for the overall operation of every department within FCI Ft Dix and was responsible during all times and events mentioned concerning Ft Dix herein.

10. At the time of filing, Defendant, Warden Doe, is the Warden at FCI Ft Dix and is responsible for any investigative Discovery for the Court and this Civil Complaint. The Warden at the time of filing is unknown to this plaintiff and she asks for leave of the court to use Warden Doe as an administrative defendant until an Amended Complaint can be performed through Discovery.

11. Unit Manager, hereby known as Unit Doe, was the supervisor and responsible for the saftey and security of the A & O bldg as to where Plaintiff was being housed at Fort Dix New Jersey. The Unit Manager at the time of filing is unknown to this Plaintiff and she asks for leave of the Court to use 'Unit Doe' as an administrative defendant until an amended complaint can be performed through discovery.

12. Defendant, Ms Fischer, Unit Counselor of Plaintiffs temporary housing assignment of the Admission and Orientation (A & O) building of 5841 was responsible for the safety and segregation of the Plaintiff at FCI Ft Dix, New Jersey. Counselor Fischer was jointly responsible along with Plaintiffs permanent housing Unit Counselor of unit 5803, Defendant Mr Williams, for the Plaintiffs personal and immediate safety within the housing unit.

-2-

13. Defendant, Mr Williams, Unit Counselor of Plaintiffs permanent housing assignment of building 5803, was responsible for the safety and segregation of the plaintiff at FCI Ft Dix, New Jersey. Counselor Williams was jointly responsible along with Plaintiffs temporary housing Unit Counselor of bldg 5841, Defendant Ms Fischer, for the Plaintiffs personal and immediate safety within the housing unit.

14. Defendant, N Watkins Ward, was a Case Manager at FCI Ft Dix and was responsible for the safety and segragation of the Plaintiff using the 'Risk of Victimization' assessment that was mandated by the Prison Rape Elimination Act (PREA) of 2003 and the Justice Departments regulations of 28 CFR § 115.41 during the time of Plaintiffs in-processing.

15. Defendant, Anna Morfe, staff Psychologist at FCI Ft Dix was responsible for the safety and segregation of the Plaintiff using the 'Risk of Sexual Victimization' assessment that was mandated by the Prison Rape Elimination Act (PREA) of 2003 and the Justice Departments regulations of 28 CFR §115.41 during the time of Plaintiffs in-processing.

16. Defendant, Stacie D Marantz-Tattersdi, Chief Psychologist and PREA Coordinator at FCI Ft Dix, New Jersey, was responsible for the Psychology Department and of ensuring FCI Ft Dix remains compliant with the mandates of PREA and 28 CFR §115.

17. Defendant Federal Bureau of Prisons (FBOP) is the federal agency that is responsible for safe keeping and care of the Plaintiff and is also responsible for implementing and remaining in strict compliance of the Prison Rape Elimination Act of 2003, the Justice Departments Code of Federal Regulations and the FBOP Program Statements that support PREA.

## V NATURE OF ACTION

18. This action is brought under the US Constitution Amendment §8 "cruel and unusual punishment" clause in relation to three brutal rapes.

19. The Plaintiff, who is incarcerated for the very first time, was put in jeopardy of being sexually assaulted in a housing unit at Ft Dix with abusive veteran inmates. Despite the Prison Rape Elimination Act, and the Federal Justice Department Regulations, Defendant N Watkins Ward, Case Manager, annotated only one risk factor on Plaintiffs' Intake Screening Form on July 2, 2013, **Exhibit A(1)** however, Defendant Anna Morfe, Staff Psychologist, annotated five personal risk factors on Plaintiffs "Risk of Sexual Victimization" assessment just eight days later on July 10, 2013, **Exhibit (Ex) A(2)** the day just before the first two rapes. Plaintiffs known risk factors from 28 CFR §115.41 substantiates and supports that, through the defendants, the FBOP did NOT separate the abusive inmates from the vulnerable inmates (the Plaintiff in this case) and knowingly placing her in harm despite knowing the prisons extremely violent environment and these obvious Deliberate Indifferences are some of the main factors leading to her being raped three times by the same perpetrator, for which these violent attacks still haunt and traumatize her today. **fnt(i),(ii)**.

20. The FBOP controlls all of the files and documents of the Plaintiff. As the court will soon learn the Plaintiff has many documents to support Deliberate Indifference to her Eighth Amendment claim, however, the FBOP will not release the most damaging evidence, despite the Plaintiffs FOIA/PA requests and appeals that further proves Deliberate Indifference beyond any reasonable doubt by the FBOP and the other named defendants in this civil action. The FBOP's refusal to provide the entire case file regarding the claims in this civil action, as well as the FBOP violating 28 CFR §115.73-Reporting To Inmates-, proves fraudulent concealment by the FBOP and has thus prohibited the Plaintiffs abilities to file this civil action within the standard Statute of limitations period.

-4-

21. **By** the FBOP not allowing for proper protection from fear and continuous sexual assaults and harassment at FCI-Forrest City and FCI-Elkton, Plaintiffs diagnosed Post Traumatic Stress Disorder (PTSD) has been aggravated. PREA and 28 CFR §115.41 mandated risk assessments be performed so that Plaintiff who is vulnerable be seperated from the abusive. At present, Plaintiff is constantly being sexually harassed at FCI-Elkton for which exaserbates her serious mental health concerns.**fnt (ii)**. **(Ex B,C(1-6),C(7-19))**

    **NOTE:** In respect to the court, this section is to help save judicial economy with this action and the prescreening of 28 USC §1915A.

## VI TOLLING
### A. Case Law

22. Plaintiff's last sexual assault at Ft Dix was on July 13, 2013, for which started the 42 USC §1983 Statute of Limitations which allows a two (2) year limitation period to file the §1983 claim. Wilson Vs Garcia,471 US 261,85 LED 2d 254,105 S Ct 1938(1985).

23. "In New Jersey that statute is N.J.S.A. 2A:14-2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." Cito Vs Bridgewater Township Police Dept, 892 F2d 23,25(CA3,1989), cited and followed by Dique Vs NJ State Police,603 F3d 181(CA3,2009).

24. "Equitable Tolling of a Statute of Limitations may apply where a complaint succeeds a filing deadline through either the complaintant's benign mistake or an adversary's misconduct." United States Vs Midgley,142 F3d 174,179(CA3,1998) citing Irwin Vs Department of Veterans Affairs,498 US 89,96,111 S Ct 453,457-58,112 LED 2d 435 (1990).

25. "Equitable Tolling may be appropriate if (1) the defendant has actively misled the Plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or

-5-

(3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Midgley @142 F3d 179. (internal quotation marks omitted)

26. "Federal courts invoke the doctrine of equitable tolling only sparingly, and will not toll a statute because of what is at best a garden variety claim of excusable neglect on the part of the defendant." Midgley @ 142 F3d 179. (internal quotation marks omitted) citing Irwin @ 498 US 96.

27. "Absent  a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the rare situation where equitable  tolling is demanded by sound legal principles as well as the interests of justice." Midgley @ 142 F3d 174. (internal quotation marks omitted)

28. Even when a statute of limitations is borrowed from state law, however, federal law governs "what constitutes accrual." Dique Vs New Jersey State Police, 603 F3d 181,185(3d Cir,2010)

29. A cause of action "accrues and the statute of limitations commences to run, when the wrongful act or omission results in damages." Dique @ 603 F3d 185-86. citing Wallace @ 549 US 391.

30. In other words, the cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Dique @ 603 F3d 186, citing Wallace @ 549 US 388.

31. Thus under federal law, a cause of action accrues "when the plaintiff knew or should have known of the injury upon which the action is based." Montanez Vs Sec'y Pennsylvania Dept of Corr, 773 F3d 472, 480(3rd Cir,2014)

32. "The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew, but what a reasonable person should have known." Kach Vs Hose,

589 F3d 626,634(3rd Cir, 2009).

## B. Facts in Support of Tolling

33. The 42 USC §1983 claim started at the time of the last rape that happened on July 13, 2013. **fnt (iii)**

34. The two year statute of limitations would have ended under the New Jersey law and §1983 on July 13, 2015. **fnt (iii)**

35. Plaintiffs PreSentence Report (PSR) indicates that Plaintiff was seen by a Forensic Psychologist, Dr Reardon **[fnt (vii)]** that tested Plaintiff for a variety of Mental Health concerns, the following is quoted in Plaintiffs PSR pertaining to Dr Reardons findings on Plaintiffs testing;

> "Psychologist described [Plaintiff] as a significantly psychologically disturbed 35 year old single gay male."

> "Psychologist confirmed major depression recurrent diagnosis with potential psychotic episodes."

> "It appears he experienced almost derealization type phenomena when he would go online."

> "It is the psychologists opinion there were most likely times when [Plaintiff] was online when the lines of reality were significantly blurred."

> "Dr Reardon diagnosed [Plaintiff] with Major Depression Recurrent and mild personality disorder." **fnt (iv), (vii).** **(Ex Y).**

36. Plaintiff is,and was, being treated with medication and psychotherapy for anxiety /Panic Attack Disorder, severe depression, and through out her incarceration within the FBOP. **fnt (iii),(iv),(ix). (Ex D,E,F).**

37. Plaintiff suffers from extreme trauma from the rapes and that the FBOP does not follow 28 CFR §115.41 as to the seperation of the Plaintiff from other sexually abusive inmates at FCI Forrest City and FCI Elkton. **fnt (iv).**

38. Plaintiff never knew that her rapes were substantiated until October 3, 2017 as to when she received copies of her psychology files pertaining to her mental anguish and distress since her incarceration. Clarifying to the court **(Ex G(1),G(2))** are the Plaintiffs email requests for psychology and medical records also **(Ex H(1), H(2))** are Psychology records Plaintiff received on October 3 2017 which are the exact records Plaintiff first learned that the FBOP substantiated her sexual assault allegations, the perpetrator was found guilty of the acts, the perpetrator was given an incident report, and that the perpetrator was identified as a separatee from the Plaintiff. **fnt (v). (Ex G(1-2),H(1-2)**

39. Plaintiff has never received the report under 28 CFR §115.73 from the investigation nor the FBI's follow up also violating 28 CFR §115.86. **fnt(v). (Ex I).**

40. Plaintiff has never seen any such notifications or attempted notifications under §115.73(e) and  also violating 28 CFR §115.86. **(Ex I).**

41. Plaintiff immediately filed a grievance and subsequent appeals pertaining to the rapes and the FBOP's deliberate indifference on October 8, 2017 as mandated by 28 CFR §115.52(b)(1),(b)(4), (d)(1). **fnt (vi). (Ex J).**

42. Plaintiff filed Freedom of Information Act requests to the FBOP and the FBI to obtain information on the investigation/conviction on October 5, 2017. **fnt (vi). (Ex I).**

43. After finding out about the substantiation of the rapes, Plaintiff wrote to approximately four outside legal firms to try to exercise her legal rights to her Eighth Amendment claim. **fnt (vi).(Ex K(1-4).**

44. It was in the favor of the FBOP and staff at FCI Ft Dix to keep Plaintiff ignorant of all information and allow her to be in a State of mental anguish to foil any possibility to be within the statute of limitations and to be able to file a §1983claim. **fnt (iv)**

45. It is in the best interest of society to allow Equitable Tolling so that the FBOP can no longer induce silence from their prison population who they have complete control over and continue with their sadistic ways of allowing prison rapes to continue. (Complaint # 22-25).

## VII FACTS OF THE SEXUAL ASSAULTS
## AND DELIBERATE INDIFFERENCE

46. Plaintiff was arrested on June 1, 2012 resulting in convictions of 18 USC §2251(a) and 18 USC §2422(b). These are the first and only convictions of the plaintiff. **(Ex L)**.

47. While being detained in Franklin County, Ohio during the preliminary stages of the above convictions, Plaintiff was assaulted on two different occassions for being a known, effiminate Lesbian, Gay, Bisexual, Transgender (LGBT) inmate. **fnt (viii)**. **(Ex M)**.

48. These assaults resulted in injuries consisting of: concussions, severe swelling, severe bruising, broken nose, teeth piercing entirely through lip, significant blood loss, significant abraisons, exacerbation of elevated depression and anxiety attacks. **fnt (viii)**. **(Ex N)**.

49. Around the time of the first of these two assaults, Plaintiff was prescribed the medication Remeron (aka Mirtazapine) for the sedative effects. To the best of Plaintiffs recollection the starting dose was 30mg nightly. **fnt (ix)**.

50. At the time of Plaintiffs arrest, Plaintiff was prescibed and actively self administering since 2006:Effexor XR 225mg and Xanax 2mg for major depressive disorder, and major anxiety disorder

respectively, as well as Depakote-(though Plaintiff does not remember the dosage). **fnt (ix)**

51. Due to Xanax being prohibited because of its narcotic properties, the County Officials prescribed Buspirone in lieu of Xanax. Buspirone is non-narcotic, but has the same basic effects as Xanax. **fnt (ix).**

52. Approximately eleven months after being arrested Plaintiff was sentenced to 195 months to the custody of the FBOP. **(Ex L)**

53. Approximately twenty four days later Plaintiff was transfered to her designated institution, Federal Correctional Institution (FCI) Ft Dix, having had a one night layover at Federal Detention Center (FDC) Philadelphia. **(Ex O, A(1)).**

54. The Prison Rape Elimination Act (PREA) of 2003, 28 CFR §115.41 and Program Statement (PS) 5324.12 mandated that an Intake Screening at each facility that the Plaintiff is transferred to, must use the PREA Intake Objective Screening Instrument allowing for the classification of inmates in regards to risk of sexual victimization. Section 115.41 mandates ten minimal criteria to assess inmates for Risk of Sexual Victimization, however, the FBOP "Intake Screening-Inmate Interview" does not meet this minimal criteria. In fact, the FBOP fails to assess most major criteria outlined, such as: 28 CFR §115.41-Screening for risk of victimization and abusiveness (d)(1),(2),(3),(4),(5),(6),(7),(9), and (10). PREA mandates ten minimal criteria, but the only criteria of this initial intake assessment in compliance with the PREA mandates is : §115.41(d)(8)-Whether the inmate has previously experienced sexual victimization. This blatant violation of 28 CFR §115.41 by the FBOP supports and establishes deliberate indifference by the FBOP. This violation is a major problem, and was a major component leading to Plaintiff being raped multiple times as the FBOP failed to acknowledge PREA's known risk factors for segregated housing assignments for inmates (Plaintiff in this case). **fnt (x).**

-10-

55. Before arrival at Ft Dix on July 2 2013, Plaintiff had a one night stay on July 1 2013 at FDC Philadelphia. FDC Philadelphia used form Intake Interview for which did not label Plaintiff for any possible risk for sexual victimization contrary to PREA,§115.41 and PS 5324.12. **fnt (xi). (Ex O).**

56. Absolutely NO information nor any risk factors where anotated from Franklin County Jail. **(Ex O)**

57. Plaintiff arrived at FCI Ft Dix on July 2 2013 and Case Manager N Watkins Ward recorded number 6A as the only risk of victimization and noted "age 13", again violating PREA §115.41, and PS 5324.12. **fnt (xii). (Ex A(1), O).**

58. Around this time during a conversation with plaintiffs mother via telephone, Plaintiff learned that her maternal grandfather had passed away. This death exacerbated Plaintiffs depression, anxiety, and fear of being imprisoned for the very first time. **fnt (xiii) (Ex P).**

59. Beginning the night of July 2, 2013 Plaintiff began receiving verbal invitations, demands, threats, and "cat calling" for sex from various inmates specifically particularly by an inmate the Plaintiff came to know by the name of "C", an A & O unit laundry orderly. These invitations, demands, threats, and "cat calling" persisted daily. During this time, "C" also informed Plaintiff that he was incarcerated because of a high profile, violent, sexual assault charge. **fnt (xiv).**

60. Due to the fact that the FBOP has withheld all records pertaining to the investigation of the events leading up to this civil action, Plaintiff has never learned the legal name of the individual known as "C" who subsequently brutally raped Plaintiff on three occassions. **fnt (xiv). (Ex I).**

61. On or about July 9, 2013, Plaintiff met with the A & O housing unit Counselor, Ms Fischer and informed that she was being invited, demanded,

threatened, and getting "cat called" for sex. Counselor Fischer asked Plaintiff who was making the threats. Plaintiff informed Fischer that multiple inmates had, however, plaintiff only knew the "nickname" of one of the inmates. Plaintiff informed Fischer an inmate known by the name of "C", that was a unit laundry orderly, was harassing, threatening, demanding, and "cat calling" her for sex. Fischer indicated verbally that she knew who he was and stated she would look into it, this violated 28 CFR §115.62. fnt (xv). (Ex C(1)).

62. On July 10, 2013 Plaintiff was apparently seen by Psychology per PS 5324.09, Sexually Abusive Behavior and Intervention Program, within 14 days of the aforementioned screening. Five factors were annotated from §115.41 indicating the following:

- Previous victim of sexual assault,
- Previously placed in Protective Custody; fear of placement in general population,
- Perceived or actual gender or sexual orientation diversity,
- First time incarceration,
- Criminal [history] of sex offenses with adult/child victims.

Anna M Morfe, Staff Psychologist, used the Plaintiffs own opinion as to whether she could be placed with abusive veteran inmates, also stating "[she] shows no indications that would require [her] "at risk" level to be raised significantly above any other inmates", which allowed Morfe to state Plaintiffs Mental Status as: "[her] psychological stability for custody is judged to be FAVORABLE". Evidence will support that staff violated federal law of 28 CFR §115.51 (this event should have put staff on notice on top of all the other risk assessments); 28 CFR §115.61 (staff should have reported Plaintiffs complaints); 28 CFR §115.62 (no immediate action to protect Plaintiff); PREA, PL 108-79, 117 stat 974 (Purposes numbers (1),(2),(6),(7) (protection of Plaintiffs Eighth Amendment.) fnt (xv). (Ex A(2)).

63. Psychology records indicate on this same day "Intake is taking Effexor, Buspar, and Remeron and diagnosed with Panic Disorder

without Agoraphobia. Sentry code has been updated to reflect current mental health care level 2". **(Ex R)**.

64. On Thursday July 11, 2013 Plaintiff entered the restroom just down the hall from her assigned third floor to take a shower. None of the three shower bays had any door/curtain/element of privacy installed on the entrances to the individual shower bays. **fnt (xvi)**. **(Ex B, S)**.

65. As plaintiff was showering in the individual shower bay she heard another inmate enter another shower bay.

66. A few moments later Plaintiff was startled to find somebody blocking the narrow doorway out of her shower bay. Due to her Panic Attack disorder Plaintiff paniced and froze. Plaintiff immediately recognized the inmate blocking her in the shower bay as inmate "C", standing nude. "C" is a middle aged light-complected black male, tall and large-wide build. **(Ex C(1),(2),(3),(5),(6); R)**.

67. Veteran inmate "C" ordered Plaintiff,"You're going to suck my dick. No teeth, no marks. Don't screem. If you bite me, leave marks, I'll beat the fuck out of you." **fnt (xvii)**. **(Ex C(1-6))**.

68. Veteran inmate "C" then got closer and put his hand behind Plaintiff's head and forced Plaintiff to squat down and perform oral sex. **fnt (xvii)**. **(Ex C(1-6)**.

69. Plaintiff had been in building #5841 for nine days and knew that staff rounds were not done routinely, rather staff generally didn't go through the housing unit except at designated count times. **fnt (xvii)**. **(Ex C(1-6))**.

70. Staff in the Unit was one Correctional Officer (CO) on duty each shift with three floors capable of holding hundreds of inmates at any given time. The CO's office was on the first floor with no cameras in this unit. **fnt (xvii)**. **(Ex C(1-6))**.

-13-

71. Plaintiff was scared to death and did not know what to do, but succumb to "C's" demands. fnt (xvii). (Ex C(1-6)).

72. Plaintiff was then ordered to turn around and bend over by "C", plaintiff complied, "C" then violently sodomized Plaintiff while he firmly put his hand forcibly over Plaintiffs mouth. fnt (xvii). (Ex C(1-6)).

73. Afterwards, "C" then ordered Plaintiff to shower while she cried uncontrollably. fnt (xvii). (Ex C(1-6)).

74. "C" then threatened to kill the Plaintiff if she told on him for the violent rapes. fnt (xvii). (Ex C(1-6)).

75. After these violent rapes by veteran inmate "C", Plaintiff experienced sever agoraphobic symptoms and withdrew as much as possible to her assigned bed. fnt (xvii). (Ex C(1-6)).

76. On July 13, 2013, inmate "C" bumped into Plaintiff from behind in the hallway of unit #5841 on the second floor. Inmate "C" directed the Plaintiff down the hall and said, "If you let on to anybody that you're in trouble I'll beat your ass, and we don't want that." Inmate "C" then directed Plaintiff to "C's" assigned room for which is a single man room. fnt (xviii). (Ex C(1-6)).

77. Inmate "C" opened the door to the room and then motioned to Plaintiff to go inside. Inmate "C" also entered the room behind Plaintiff and closed the door. fnt (xviii). (Ex C(1-6)).

78. Inmate "C" pointed for Plaintiff to go stand by his locker. Inmate "C" then covered the window on the door. fnt (xviii). (Ex C(1-6)).

79. Inmate "C" approached Plaintiff, pulled out his erect penis, and then reached out with his hand and placed his hand behind Plaintiffs head and pulled Plaintiff down. fnt (xviii). (Ex C(1-6)).

80. Inmate "C" said, "No teeth, NO marks, or I'll kill you." Inmate "C" then pulled Plaintiff violently into him forcing Plaintiff to again perform oral sex. **fnt (xviii). (Ex C(1-6))**.

81. Inmate "C" climaxed in Plaintiffs mouth and then PLaintiff spit out his ejaculate to the left onto the floor. **fnt (xviii)**.

82. Inmate "C" then told Plaintiff that if Plaintiff told, that he would kill Plaintiff. **fnt (xviii). (Ex C(1-6))**.

83. Inmate "C" then opened the door and Plaintiff left, and went to shower. **fnt (xviii)**.

84. During the next nine days many inmates made various "cat calls" and threats, and Plaintiff was scared to death of inmate "C", other inmates, and staff. **(Ex C(1-6))**.

85. On the 24th of July 2013 Plaintiff called home and told her father that she was raped. **fnt (xiv). (Ex C(1), T)**.

86. Six staff members came into building #5841 and took Plaintiff to the Units Office and met with Lt Bryant [Lybrant Wright] to report rape. Plaintiff identified "C" by hand held photos. **fnt (xx). (Ex B, Q, S)**.

87. Plaintiff then gave a detailed report as to the events of the rapes. **(Ex C(1-6), (5)**.

88. Attending staff then confiscated the journal that Plaintiff had annotated all of the events that happened at Ft Dix. **fnt (xxi)**.

89. Plaintiff was then taken to an area hospital to be examined where a Sexual Assault Nurses Exam (SANE) was completed due to the sexual assaults she suffered and blood work for any sexually transmitted diseases. **(Ex C (1-6), 5). fnt (xxii)**

90. On July 25, 2013, Plaintiff was placed in the Segregated Housing Unit (SHU).**(Ex C(1)(A), C(1-6), Q, S). fnt (xxiii)**

91. On July 25, 2013 psychology completed a 'Sexual Abuse Intervention'

-15-

by Dr. Anna M. Morfe, Staff PSychologist, and placed Plaintiff as "at risk for victimization" only after being raped three times. **(Ex. C(1), C(1)(A))**.

92. Plaintiff became tearful with Dr. Morfe and asked if she could keep these sexual assaults from happening. **(Ex. C(1), C(1)(A))**.

93. Plaintiff reported of flashbacks, and nightmares from her first sexual assault incident at age 13, being affraid of social situations and heavy feelings of anxiety; all triggered by these most recent sexual assaults. **(Ex C(1), C(1)(A))**.

94. Plaintiff reported having fears of being alone in places, especially in restrooms. **(Ex C(1))**

95. July 30, 2013 Plaintiff talked to an FBI investigator regarding the rapes. (Plaintiff can not remember the name of this FBI agent. **fnt (v,vi) (Ex B)**.

96. August 1, 2013 Captain Fitzgerald informed Plaintiff of another victim inmate that was sexually assaulted by "C". **fnt (xxiv) (Ex B, S)**.

97. On September 10, 2013 Plaintiff was transferred from FCI Ft. Dix, eventually making it through the transfer process and arriving at FCI- Forrest City in Arkansas.

## VIII Exhaustion of Legal Remedies

98. An Administrative Remedy concerning the rapes at Ft. Dix New Jersey was filed on October 8, 2017, #918384-F1. Response date was October 23, 2017 with a denial. **(Ex J)**

99. The Regional Administrative Remedy Appeal was filed on November 3, 2017, #918384-R1. Response date was December 6, 2017, also with a denial. **(Ex J)**

100. The Central office Administrative Remedy Appeal was filed on December 13,2017, #918384-A1. Response date was January 17, 2018, also with a denial, and permission to file an action within the court. (Ex J).

## IX Legal Claims

101. Plaintiff reallege and incorporates by reference paragraphs 33-45 and 46-97.

102. The Federal Bureau of Prisons at FCI Ft. Dix through Warden Jordan Hollingsworth denied Plaintiff her right to be free from being raped at this facility. Plaintiffs right was based from the United States Constitution §8 and that while being confined in prison she has the right to be free from "cruel and unusual punishments inflicted" by the three brutal and threatening rapes.

103. Plaintiffs Eighth Amendment claim was Deliberately Indifferent by the Federal Bureau of Prisons at FCI Ft. Dix along with Defendant Warden Jordan Hollingsworth; Unit Manager Unit Doe; Case Manager N. Watkins Ward; Chief Psychologist Stacie D. Marantz Tattersdi; Staff Psychologist Ana Morfe, Housing Unit Counselor Fischer, Housing Unit Counselor Williams; and the Federal Bureau of Prisons, as to not following the mandates from PL 108-79 Prison Rape Elimination Act of 2003 and the Code of Federal Regulations within all of 28 CFR § 115 as referenced within this complaint.

104. The Federal Bureau of Prisons, through FCI Forrest City and FCI Elkton, has continuously allowed Plaintiff to be sexually harassed by sexually abusive inmates living within the same housing area not following PREA and 28 CFR §115 mandates for which exacerbates her diagnosed PTSD and her other diagnosed mental illnesses as referenced in this complaint.

105. Plaintiffs Statute of Limitations allows Equitable Tolling because of the Federal Bureau of Prisons misconduct and extraordinary ways to keep Plaintiff from not only proper information to establish a

§ 1983 Complaint, but also allowing Plaintiff to be mentally anguished hoping to restrict her and cause her to be outside the Statute of Limitations through Fraudulent Concealment / Concealment.

## X Prayer for Relief

**WHEREFORE,** Plaintiff respectfully prays that this court enters judgement granting PLaintiff:

106. A Declaration that the acts and ommissions through policies of the Prison Rape Elimination Act of 2003 the FBOP and Justice Department described herein violated Plaintiffs rights under the Eighth Amendment of the Constitution and laws of the United States.

107. A permanent injunction ordering the FBOP to follow the Prison Rape Elimination act of 2003 and the Justice Departments regulations to:
    1. Properly allow the seperation of sexually vulnerable inmates from the sexually abusive inmates within housing units.
    2. Provide a safe place allowing for private showering and private use of restroom facilities to perform bodily functions in **ALL** departments for vulnerable inmates in all FBOP facilities NATIONWIDE.
    3. A safe and private way for new inmates to report abuses and fears of abuse.
    4. Proper inspection and oversite of PREA inspections.

108. An amount of ten million dollars of Compensatory Damages for each rape.

109. An amount of ten million dollars of Punitive Damages for each rape.

110. Plaintiffs cost in this suit.

111. Any additional relief this court deems just, proper, and Equitable.

DATED: Nov. 13, 2018

Respectfully Submitted:

Tony Fisher

aka Kellie Rehanna

Reg. # 70313-061

FCI-ELKTON

P.O.Box 10

Lisbon, Ohio 44432

Verification

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that  the foregoing is true and correct.

Executed at Lisbon, Ohio on  November 13, 2018  .

Tony Fisher

aka Kellie Rehanna

Reg. # 70313-061

-19-

## FOOTNOTES

fnt(i)   Plaintiff does not recognize PREA as without a private right of action. PREA was a way for prisoners to be safely segregated between the vulnerable and the abusive prisoners. By not following PREA the Defendants have caused her Eighth Amendment claim for which is a private right of action. PREA and 28 CFR §115.41, when not followed, caused the deliberate indifference that supports her Eighth Amendment claim. As Congress stated in their findings §(13) that Farmer, in the Supreme Courts decision stated "that deliberate indifference to the substantial risk of sexual assault violates prisoners' rights under the ... Eighth Amendment." This allows A PRIVATE RIGHT OF ACTION.

fnt(ii)  Defendants violation of the Eighth Amendment has been a continuous and ongoing deliberate indifference by the FBOP because of a continuous violation of PREA and 28 CFR §115.41 from FCI Forrest City and Elkton; such as the contradiction of PREA and the FBOP's Program Statement (PS) # 5324.12 - Sexually Abusive Behavior Prevention and Intervention Program under "Prevention Planning" where upon 28 CFR §115.15(d) is discussed. In §115.15(d) it is said that: "The facility shall implement policies and procedures that enable inmates to ... perform bodily function ... without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances...", however, the BOP applies this policy as: "This section applies only to housing units...", but §115.15 does not state this, therefore, Plaintiff has been forced to endure unsafe conditions when "performing bodily functions" at recreation, education, and various other restrooms throughout the compound of every institution she has been assigned being that these restrooms do not have stall doors in compliance with the requirements of §115.15(d). (Ex U).

fnt(iii) The two year statute of limitations are supported by §1983 Civil action. (Comp. # 1,2) and ( Tolling Comp # 22-25, 28)

fnt(iv)  The facts are being supported by the Equitable Tolling Doctrine

that Plaintiff, who was brutally raped, was transferred, which aggravated her Anxiety/Panic Attack Disorder and Clinical Depression (APADCD). Her conditions continued with the FBOP's "Crash Managament" of her mental health conditions, meaning, no real psychology treatment would be performed unless she were to harm herself. Drugs are the FBOP's psychology treatment program. Plaintiffs APADCD conditions had no, and was not, healing when the FBOP nationwide does not follow §115.41 and allow her to be placed within a safe housing unit away from sexual abusers, while at any federal prison. Additionally, Plaintiff feared for her life and believed that the BOP, the BOP staff, and inmates would retaliate against her for bringing a civil action without a complete investigation that proved beyond a reasonable doubt her claims were substantiated. Because the BOP and its staff failed to comply with 28 CFR §115.73 the Plaintiff continued to live in fear for her life and retaliation. As records prove, Plaintiff has been diagnosed with Posttraumatic Stress Disorder (PTSD) by BOP Psychologists due to these rapes **(Ex C(4))**. Plaintiff has also been told by BOP Psychologist Hannah Wilson Psy.D., that "due to [Plaintiffs] continued incarceration, [Plaintiff] is among those few that suffer PTSD that are unable to complete treatment because of the continual trauma brought on by the prison environment, the same environment that [Plaintiff was] raped in in 2013." **Comp. # 25-27. (Ex. C(5), C(7-19), V, W)**

fnt(v) Plaintiff has not been notified as to the outcome of the rape investigations for over four years, and, even to this day, still does not have or know of the full outcome from the FBOP or FBI investigations. Furthermore, being that the indigent Plaintiff is incarcerated, she is severally limited on her abilities to access: the courts, records, legal counsel, investigation information, expert witnesses, interviewing potential witnesses / defendants, legal manuals, case laws, federal statutes, laws, etc., that would aide her in bringing the civil action within the two year statute of limitations from the date of accrual. If the FBOP uses this lack of information as an affirmative defense through Summary Judgement, the Plaintiff asks for Discovery so that a proper Amended Complaint can be performed. **Comp # 29-32. (Ex C(2), I)** -(Clarifying to the court, **Ex. C(2)**, that

-21-

as of the date of this document (1-7-14) the staff recorded "inmate was **allegedly** assaulted..." thereby, helping to support equittable tolling in that the Plaintiff has never received proof as to when the Plaintiffs allegations were actually substantiated or that the investigation was even completed as the BOP stated Plaintiff was "informed of the outcome of the investigation at that time" in their responses to Plaintiffs Administrative Remedy number 918384).

fnt(**vi**) Once Plaintiff, on her own, received her psychology files she has shown great resolve in trying to receive complete information for the filing of her civil complaint, including, but not limited to, Freedom of Information Act (FOIA) requests to the FBOP and FBI, however, to date, she has not received this information from the time of October 5, 2017 when the FOIA was requested. Up until this point, she had thought that even though she had been raped, she was unable to prove it until the proper authorities had finished their investigation and proved beyond a reasonable doubt her claims were substantiated and that she would be informed of the outcome of the investigations, as she was told by the FBI agent and BOP staff involved in this complaint, that she would be. Plaintiff also through these years, by the way the FBOP secretly allows this behavior, thought that she just had to endure this prison life as a part of her sentence. (**Ex. C(2), I, X**) (Clarifying to the Court, **Ex X**, this document supports Plaintiffs claims that before October 3, 2017 Plaintiff had never been informed of any outcome to the investigation, or that her allegations had been substantiated.)

fnt(**vii**) Dr. Reardon  administered various tests to Plaintiff to determine Plaintiffs mental state to potentially explain why she comitted the instant offenses. Defense Attorney Weiner felt a Forensic Psychologist would benefit by giving an understanding of all of the Plaintiffs diagnosed mental health disorders at time of the offenses and arrest. (**Ex. Y**)

fnt(**viii**)  Plaintiff was violently assaulted during her pretrial on October 5, 2012, and January  15, 2013 while in federal custody. These greatly added to the amount of her APADCD and shows how there is a sadistic attitude of the federal prison system to place her in fear continually. Why? Because she belongs to a quasi suspect group? These assaults were basically allowed because the federal prison system refuses to follow PREA. (**Ex. L**)

fnt(ix) **Remeron / Mirtazapine** blocks the passage of stimulant chemicals
(Seratonin and Nonadrenaline) in and out of nerve endings and has a
sedative effect. Possible side effects suffered: tiredness, dizziness,
abnormal dreams, abnormal thinking, anxiety, agitation, confusion.
This medication is prescribed for major depressive disorder as it is
an antidepressant.
**Effexor XR / Venlafaxine XR** is prescribed for major depressive disorder
and Post Traumatic Stress Disorder (PTSD). Side effects suffered: tiredness,
dizziness, nervousness, weakness, excessive sweating, anxiety, reduced
sex drive. This drug is an antidepressant.
**Xanax / Alprozolam** is prescribed for generalized anxiety disorder,
and axiety associated with depression; panic disorder with or without
agoraphobia. This drug is a benzodiazepine sedative. Benzodiazepines
directly affects the brain. Alprozolam is a central-nervous-system
depressant. Side effects suffered: drowsiness, lethargy, inactivity,
slurred speach, dizziness, nervousness.
**Depakote / Divalproex Sodium** is an antimanic medication and is prescribed
for anger management; and anxiety or panic attacks. Side effects suffered:
dizziness, sedation, weakness. (Ex. E, R)

fnt(x) In Plaintiffs situation, the FBOP uses an Intake Screening form
during her intake arrival at each FBOP institution. Many were very
inconsistent, and yet, the only criteria of the PREA mandated ten prongs
that was used, and has continued being used is: "Whether the inmate
has previously experienced sexual victimization". Usually days later,
psychology would perform, and only if recommended, establish the §115.41
elements for allowing vulnerable inmate(s) to be housed seperately
from the abusive. (Ex A(1), H(2), O, W, Z(1-5))

fnt(xi) The intake interview at Philadelphia cited NO PREA concerns, and
did not use the PSI during the process. (Ex. O)

fnt(xii) The Intake Interview at Ft. Dix cited §115.41 (6A), and the Plaintiff
was assigned to the A & O unit (5841 building, room 320) until the
completion of A & O, though building 5803 was Plaintiffs permanently
assigned housing unit.

fnt(xiii) Plaintiff learned that her grandfather had passed away on the very day that she first arrived at Ft. Dix, July 2, 2013. Plaintiff had for years been torn-up about her grandfathers dementia and struggles after knowing her grandfather as a very strong man. Though her grandfather was a devoted Christian, he supported Plaintiff in her lifestyle, decisions, welcomed her significant other to the family with open arms, and devoted his life to the Plaintiff. Plaintiff and her grandfather were very close throughout their lives. Plaintiff spent long weekends with her grandfather, taking rides with her grandfather on his motorcycles, going to church, sitting under her grandfathers carport watching the cars drive up and down the street while conversing and catching up on times past. Plaintiff loved her grandfather dearly, his death was devastating to her. Plaintiff, suffering from multiple ailments and mental struggles as well as being new to the prison environment, went into a debilitating onset of severe depression and again withdrew the only was she knew how, she retreated to her assigned bed. Plaintiff during this time became so distressed and duressed that at times she froze with anxiety, panic attacks, and great mourning for her grandfather. (Ex P)

fnt(xiv) Upon Discovery inmate "C's" legal name will allow for further investigation into "C's" possible criminal charges which may further substantiate additional deliberate indifference by the FBOP, which may also further support the claim of Fraudulent Concealment / Concealment by the FBOP. Plaintiff has not received any information from the investigation from the Special Investigative Supervisor (SIS) of the FBOP under 28 CFR §115.73. Her first time knowing that her rapes were substantiated was on October 3, 2017 and learned only through psychology records she requested for other purposes. (Ex H(1), H(2)). Even through one interview with an unknown FBI agent, she has not been informed of any indictment or conviction. (Comp. # 95).

fnt(xv) US Vs. DW, 198 F Supp 3d 18, 67 (2nd Dist. 2016) used testimony from Mr. Phillip Wise who was a former FBOP Warden and Assistant Director, and the Court used their opinion that inmates who are "especially susceptible to abuse are inmates that are perceived as gay, having been a victim of sexual abuse in the past, suffering from mental illness,

and being a knwon sex-offender, particularly against children." This is supported by the Bureau of Justice Statistics' 2011-2012. Out of these five prongs, Plaintiff was recorded with four of these "especially susceptible to abuse" prongs, with only one missing simply because incompetent staff failed to recognize from her PSI that she suffers from known mental health diagnosis'.  The DW opinion @ 198 F Supp 3d 67-74 had used very powerful evidence and expert testimony so that the court would have support for their decision to sentence DW to a below guideline range. Nonetheless, Plaintiff has, as DW was found to have, compounded factors making her risk of sexual victimization to be significantly higher than other inmates as mandated in the DW case. Interestingly though the "Risk of Sexual Victimization" completed by Dr. Anna Morfe, Staff PSychologist, on July 10, 2013, the day just before the Plaintiff was raped the first two times, states Plaintiff "shows no indications that would require [her] "at-risk" level to be raised significantly above any other inmates", though at the beginning of this very same document, Dr. Morfe states "based on responses on the 'Screening for Risk Victimization and Abusiveness form (BP-A1030) during the Initial Team Intake Screening, Inmate was found to be potentially "at-risk" for victimization for sexual abuse". (Ex A(1), H(2), O, W, Z(1-5)).

fnt(xvi) The shower facilities at Ft. Dix in this building violated 28 CFR §115.15(d). Evidence shows that Ft. Dix had been for a while, and especially during the time of Plaintiffs first two rapes, that they were in violation of PREA. This supports the Deliberate Indifference standards of the Eighth Amendment claim evidenced by the staff and the Wardens knowledge of the showers being open, no doors, or curtains in the A & O building (5841) - though Plaintiff witnessed "PREA" shower curtains in the 5803 housing unit during her visits to speak with Counselor Williams.

fnt(xvii) Comp. #66-84 all support claims that the violent and abusive rapes performed by inmate "C", and through the FBOP's and its staffs failure to abide by PREA mandates (28 CFR §115.15(d)) provided an open opportunity to a perpetrator to sexually assault a "vulnerable inmate" found to be at "potential risk of sexual victimization" raises to a Constitutional violation of the Eighth Amendment.

-25-

fnt(xviii) Comp. #66-84 all support the claims that the violent and abusive rapes performed by "C", and by the lack of BOP professionalism and failure to abide by PREA mandates (28 CFR §115.13(a)(b)(d)) provided an open opportunity to a perpetrator to sexually assault a "vulnerable inmate" found to be at "potential risk of sexual victimization" raises to a Constitutional violation of the Eighth Amendment.

fnt(xix) In Plaintiffs desperation, after attempting to report to several staff members, with little, if any, interest by staff members, that Plaintiff had been raped on multiple occassions, she realized that she was not being taken seriously, as evidence proves. On this day, Plaintiff approached Associate Warden Donahue at the lunch meal (main-line) and explained she had been getting threatened, to which Donahue asked Plaintiff if she had  spoken to Counselor Fischer or to a Mr. Robbins, to which Plaintiff indicated that she hadn't. At this time Plaintiff being under duress and unsure of staff names due to her short tenure at the facility, she didn't know Counselore Fischer except visually. Plaintiff, having been invalidated by staff, and suffering multiple mental health diagnosis', became very timid when Donahue approached and introduced Plaintiff to Counselor Fischer, who Plaintiff immediately visually recognized as the A & O Unit Counselor that ignored her on (or about) July 9, 2013, and did nothing to keep Plaintiff from getting raped. And with no evidence of any reports generated by staff, nor anything being performed to protect her, she placed this call in hopes that her parents would contact her defense attorney to assist in her protection.

fnt(xx) This event was only performed by staff because they were monitoring her phone calls to her parents at Lt. Lybrant Wright informed her was the case. The staff knew at this time that outside family members now knew and would be involved, and immediate action for Plaintiffs safety now had to be enforced.

fnt(xxi) Since the time of Plaintiffs arrest she had been keeping  detailed daily journals as to her experiences, assaults, victimizations, etc. During the paramedics medical evaluation of Plaintiff at FCI-Ft. Dix Medical Services Department for the sexual assaults, the paramedics,

-26-

employed by the FBOP, confiscated her most recent journal and pen she used to write in her journal, and sealed them in a clear plastic bag.

fnt(xxii) These hospital records have never been provided to Plaintiff.

fnt(xxiii) During Plaintiffs heinous time in the SHU, August 2, 2013 was the first time that the defendants allowed her paper and pen to write home. Plaintiff, by Ft. Dix policy, was not allowed to use the phone for 30 days after being placed in the SHU. Plaintiff was in the SHU for forty-eight days with only being able to phone her parents once to the best of her recollection. Plaintiff was only allowed to go outside for recreation very few times as Captain Fitzgerald ordered Plaintiff to "rec." alone, however, SHU staff would not follow this order. Plaintiff informed Psychology of this on August 29, 2013 who informed the Captain. This is also in violation of 28 CFR §115.43. (Ex S, AA(1),(2),(3)).

fnt(xxiv) Plaintiff was informed of this while she was in the SHU. Captain Fitzgerald also informed her that there was no safe place for her to be at Ft. Dix, in other words, there was absolutely no safe housing at Ft. Dix.