UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TONY FISHER,

    Plaintiff,

v.

JORDAN HOLLINGSWORTH, et al.,

    Defendants.

Civil Action No.
18-16793 (RBK) (AMD)

OPINION

**ROBERT B. KUGLER, U.S.D.J.**

Plaintiff Tony Fisher, also known as Kellie Rehanna (hereinafter referred to in the feminine at Plaintiff's request), a prisoner confined at Elkton-Federal Correctional Institution, Elkton, Ohio, is proceeding *pro se* with a proposed amended civil rights complaint ("Amended Complaint") and motion to appoint counsel. (ECF Nos. 8, 9). For the reasons stated in this Opinion, the Court will dismiss Plaintiff's Amended Complaint without prejudice for failure to state a claim, deny Plaintiff's motion to amend as futile, and deny without prejudice her motion to appoint counsel.

## I. BACKGROUND

The Court will construe the allegations of the Amended Complaint as true for the purpose of this Opinion. Plaintiff names the United States of America, Jordan Hollingsworth, Warden Doe, Unit Doe, Ms. Fischer, Mr. Williams, N. Watkins Ward, Anna Morfe, and Stacie D. Marantz-Tattersdi as Defendants in this matter.

This case arises from a number of incidents in which Plaintiff was the victim of sexual assaults from a fellow inmate, during her incarceration at FCI Fort Dix, on July 11 and 13, 2013. (ECF No. 9-1, at 6). Prior to transferring Plaintiff to FCI Fort Dix, officials improperly assessed Plaintiff's risk of victimization. (*Id*. at 12).

Plaintiff arrived at FCI Fort Dix on July 2, 2013. (*Id*.). Shortly after her arrival, Defendant Ward evaluated Plaintiff for her risk of victimization, but erroneously assessed Plaintiff as having only one risk of victimization factor. (*Id*.). Upon entry into general population, Plaintiff began receiving verbal invitations, demands, and threats for sex from other inmates. (*Id*.). In particular, "inmate C" made a number of these threats and informed Plaintiff that he "was incarcerated because of a high profile, violent, sexual assault charge." (*Id.*).

On or about July 9, 2013, Plaintiff reported these threats to the unit counselor, Defendant Fischer, who indicated that she would "look into it." (*Id*. at 13). The day after, a staff psychologist evaluated Plaintiff and identified five risk of victimization factors but concluded that it was not necessary to raise Plaintiff's "at-risk" level "significantly above any other inmates." (*Id*.).

Despite identifying these risk factors, officials did not separate Plaintiff from potentially dangerous inmates, and on July 11 and 13, 2013, "inmate C" sexually assaulted Plaintiff on three separate occasions. (*Id*. at 15–16). Plaintiff reported the sexual assaults, on July 24, 2013. (*Id*. at 16). Thereafter, Plaintiff received medical and psychological treatment, as well as a transfer to FCI Forrest City in Arkansas. (*Id*. at 17).

In September of 2017, Plaintiff requested her psychological records and received them on October 3, 2017. (*Id*. at 9). After receiving those records, Plaintiff realized "that her rapes were substantiated." (*Id*.). Plaintiff then filed administrative remedies regarding these sexual assaults, seeking monetary and injunctive relief, and appeals thereof, on October 8, 2017, November 3, 2017, and December 13, 2017. (ECF No. 9-6. at 79–87). Plaintiff received a denial at each institutional level and received the last of which on January 17, 2018. (ECF No. 9-1, at 17–18).

On December 4, 2018, Plaintiff filed her initial Complaint in this matter, and then on February 19, 2019, filed the instant Amended Complaint, raising Eighth Amendment claims

against all Defendants. Plaintiff seeks monetary compensation and nationwide injunctive relief to address a number of issues related to vulnerable inmates. (ECF No. 9-1, at 19).

## II. STANDARD OF REVIEW

### A. Standard for *Sua Sponte* Dismissal

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

3

support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

    **B. Bivens Actions**

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855. As is relevant in the present case, the Supreme Court has also recognized an implied cause of action for failure to protect claims under the Eighth Amendment's deliberate indifference standard. *Bistrian v. Levi*, 912 F.3d 79, 90–91 (3d Cir. 2018)

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

4

## III. DISCUSSION

**A. Bivens Action Against Jordan Hollingsworth, Warden Doe, and Unit Doe**

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff provides no facts describing how Defendants Hollingsworth, Warden Doe, and Unit Doe allegedly violated her constitutional rights. Plaintiff fails to allege that these Defendants expressly directed the deprivation of her constitutional rights or created policies which left subordinates with no discretion other than to apply such policies, which in turn produced the alleged deprivation. Nor does Plaintiff allege facts to support the personal involvement of these

5

Defendants, reciting only the conclusion that they were responsible for some aspect of the prison and violated Plaintiff's rights. Accordingly, the Court will disregard the Amended Complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements," *Iqbal*, 556 U.S. at 678, and dismiss Plaintiff's claims against these Defendants, without prejudice, for failure to state a claim.

### B. Statute of Limitations

Plaintiff, to her credit, acknowledges that she failed to file this matter within the statute of limitations period. (ECF No. 9-1, at 5). Consequently, the Court will address the statute of limitations on *Bivens* claims since it appears from the face of the Amended Complaint that this action is time barred. *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.").

Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher,* 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 190 (3d Cir. 1993)). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. Stat. Ann. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer,* 520 F. App'x 58, 60 (3d Cir. 2013). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury. *See Hughes,* 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.,* 142 F.3d 582, 599 (3d Cir. 1998)).

Significantly, accrual does not depend on whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *See Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F.Supp.2d 477, 484 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Here, Plaintiff complains of Defendants' failures to protect her which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the failure to protect to rise to a constitutional violation, an inmate must demonstrate that she was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant was "deliberately indifferent" to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994); *Bistrian*, 696 F.3d at 367.

In this context, "deliberate indifference" is a subjective standard. *Bistrian*, 696 F.3d at 367–69. The prison official "must actually have known or been aware of the excessive risk to inmate safety" and it is "not sufficient that the official should have known of the risk." *Id.*; *Miller v. Ricci,* No. 11-0859, 2011 WL 1655764, at *10 (D.N.J. Apr. 28, 2011) ("To plead an Eighth Amendment failure to protect claim a plaintiff must plead facts raising a plausible inference of ... the defendants' deliberate indifference to that particular risk of harm").

With those principles in mind, Plaintiff knew of or had reason to know of her injuries on July 11 and 13, 2013, the dates of the sexual assaults. According to the Amended Complaint, Plaintiff was very much aware of the serious risk to her safety, and the remaining Defendants were aware of that risk through Plaintiff's evaluations. Additionally, in the case of Defendant Fischer,

7

Plaintiff directly advised Defendant Fischer of the dangerous inmates and their threats to Plaintiff. Finally, Plaintiff was aware that Defendants were deliberately indifferent to that risk when they failed to separate her from those inmates or otherwise protect her from harm.

Taken together, and as Plaintiff concedes, she had a complete cause of action as to all of her claims on July 13, 2013, and the statute of limitations required her to file a complaint as to those claims on or about July 13, 2015. (ECF No. 9-1, at 6 ("Plaintiff's last sexual assault at Ft Dix was on July 13, 2013 . . . which started the . . . two (2) year limitation period to file the . . . claim.")).

Accordingly, because Plaintiff did not file her initial Complaint until December of 2018, the statute of limitations bars these claims and any claims with a two-year statute of limitations that began to accrue prior to December of 2016.

Certain statutes and doctrines may allow the Court to toll the statute of limitations. For example, New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.,* N.J. Stat. Ann. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A:14–22 (detailing tolling because of non-residency of persons liable). New Jersey law also permits "equitable tolling" where an adversary's misconduct induced or tricked a complainant into allowing the filing deadline to pass, or where "in some extraordinary way" someone or something prevented plaintiff from asserting her rights, or where a plaintiff has timely asserted her rights through a defective pleading or in the wrong forum. *See Freeman v. New Jersey,* 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002). However, absent a showing of a defendant's intentional inducement or trickery, the Court should apply the doctrine of equitable tolling sparingly and only where sound legal principles and the interest of justice demand its application. *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrines. *See Lake v. Arnold,* 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where extraordinary circumstances prevent a plaintiff from asserting her claims; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. *Id.* at 370 n.9.

In the present case, Plaintiff argues that circumstances merit equitable tolling in her case. (ECF No. 9-1, at 8). First, Plaintiff refers to her history of mental health issues, which include anxiety, depression, and panic attack disorder, as well as her trauma from the sexual assaults. (*Id.* at 8–9). Plaintiff does not, however, allege that any of these conditions *prevented*[2] her from filing a complaint within two years, or how her conditions changed, such that she was then able to file a complaint several years after the expiration of the statute of limitations. *Lake*, 232 F.3d at 370 n.9. Accordingly, without more, the Court declines to equitably toll the statute of limitations period on this ground.

Next, Plaintiff contends that she "never knew that her rapes were substantiated until October 3, 2017" when she received copies of her psychological records. (ECF No. 9-1, at 9). Plaintiff characterizes this delay, and the refusal to release "the most damaging evidence," as "fraudulent concealment" on the part of the Federal Bureau of Prisons ("FBOP") and FCI Fort Dix. (*Id.* at 5). More specifically, she alleges that the FBOP's "refusal to provide the entire case file . . . prohibited the . . . [Plaintiff's ability] to file this civil action within the standard [s]tatute of limitations period. (*Id.*).

---

[2] Nor is it apparent to the Court how such conditions could have absolutely prevented Plaintiff from filing a complaint within the statute of limitations period.

The Court rejects Plaintiff's argument. Although the records relating to the disciplinary charges against "inmate C" might be valuable evidence to help prove her case, they were not *necessary* to the filing of Plaintiff's initial complaint. *See, e.g., Borntrager v. Zisa*, No. 09-3076, 2011 WL 1211349, at *3 (D.N.J. Mar. 29, 2011) (discussing that a plaintiff must first *allege* facts to state a claim in a complaint, and then later prove those facts at trial). As discussed above, Plaintiff had a complete cause of action on January 13, 2013.

Knowledge of whether "inmate C" received disciplinary charges or whether he was convicted for the sexual assaults, were not necessary to create Plaintiff's cause of action. Stated differently, Plaintiff's realization that she may have had a viable claim or evidence to support such a claim, had no impact on when her claims began to accrue. (ECF 9-1, at 9); *see Giles*, 542 F. App'x at 123 (stating that accrual does not depend on whether the claimant knew or should have known that the injury constitutes a legal wrong).

Accordingly, because it is apparent that all of Plaintiff's claims are time-barred as they arose prior to December of 2016, the Court will dismiss such claims as untimely. If Plaintiff believes that she can assert facts that warrant tolling, she may move to re-open this case and file a second proposed amended complaint stating the basis for such tolling.

**C. Motion to Appoint Counsel**

Plaintiff has also filed a motion requesting the appointment of pro bono counsel. (*See* ECF No. 8). Our jurisprudence provides the Court with broad discretion in determining whether to request representation for an indigent civil litigant notwithstanding the fact that indigent civil litigants "have no statutory right to appointed counsel." *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993), *cert. denied,* 510 U.S. 1196 (1994). In evaluating a motion seeking appointment of counsel, a court must preliminarily determine whether a plaintiff's claims have arguable merit. *Id.* at 155.

If a court finds that a plaintiff's claims have merit, the court should consider the following non-exclusive factors: 1) the plaintiff's ability to present his or her own case; 2) the complexity of the legal issues; 3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; 4) the amount a case is likely to turn on credibility determinations; 5) whether the case will require the testimony of expert witnesses; and 6) whether the plaintiff can attain and afford counsel on her own behalf. *See id.* at 155–57.

As discussed above, Plaintiff's Amended Complaint fails to state a claim entitling her to relief. As such, the Court must deny her motion for the appointment of pro bono counsel.

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiff's Amended Complaint without prejudice, deny her motion to amend as futile, and deny without prejudice her motion to appoint counsel. An appropriate Order follows.


Dated: May 10, 2019                                s/Robert B. Kugler  
                                                              ROBERT B. KUGLER  
                                                               United States District Judge