**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TONY FISHER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WARDEN JORDAN HOLLINGSWORTH, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 18-16793 (KMW) (AMD)<br><br>**OPINION** |

**WILLIAMS,** District Judge:

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's amended complaint in this prisoner civil rights matter. (ECF No. 47.) Plaintiff filed a response to the motion (ECF No. 57), to which Defendants replied. (ECF No. 60.) For the reasons set forth below, Defendants' motion shall be granted, and Plaintiff's amended complaint (ECF No. 69) shall be dismissed.

**I.　BACKGROUND**

Plaintiff is a biological male who now identifies as transgender. (ECF No. 9-1 at 2.) At the time of the events that give rise to this matter, Plaintiff did not identify as transgender, but presented as a gay male. (*Id.* at 7.) On July 2, 2013, while being held at FDC Philadelphia, Plaintiff underwent an intake interview which included a sexual victimization risk evaluation. (*Id.* at 12.) The staff member conducting that evaluation identified no risk factors for victimization for Plaintiff. (*Id.*) Plaintiff was thereafter transferred to FCI Fort Dix on July 2, 2013. (*Id.*) Plaintiff

was again evaluated, with the evaluator finding only one potential risk factor – that Plaintiff had previously been sexually assaulted twenty odd years prior. (*Id.*)

Upon being placed in a prison unit, Plaintiff was subjected to catcalling, threats, and other verbal abuse. (*Id.*) On June 9, 2013, Plaintiff reported this abuse to Plaintiff's unit counselor, Defendant Fischer, specifically identifying one individual – known as "C" – who had been harassing Plaintiff. (*Id.* at 13.) Fischer said that she would look into the issue, and referred Plaintiff for further evaluation. (*Id.*) The following day, Plaintiff was seen by a staff psychologist. (*Id.*) Although the psychologist identified some risk factors for victimization, after conferring with Plaintiff, the psychologist found "no indication" which would indicate Plaintiff was at especially high risk of abuse requiring further security measures. (*Id.*)

On July 11 and 13, 2013, Plaintiff was raped by "C." (*Id.*) Although Plaintiff did not report the rapes to staff, Plaintiff did mention the incident during a phone call, which was overheard by staff who immediately responded by taking Plaintiff into an office to meet with supervisors to report the rape. (*Id.* at 16.) Plaintiff was given a medical evaluation, and was temporarily moved to protective custody. (*Id.*) Following both prison and criminal investigations, Plaintiff was transferred out of Fort Dix on September 10, 2013. (*Id.* at 17.)

Plaintiff did not file a civil complaint regarding this incident until December 2018. (ECF No. 1.) Plaintiff thereafter filed an amended complaint on February 19, 2019. (ECF No. 9-1.) On May 17, 2019, Judge Kugler issued an opinion and order which screened Plaintiff's complaint and dismissed Plaintiff's civil rights claims as time barred. In so finding, Judge Kugler explained as follows:

> Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993)). New Jersey's statute of

2

limitations for personal injury actions is two years. *See* N.J. Stat. Ann. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer*, 520 F. App'x 58, 60 (3d Cir. 2013). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury. *See Hughes*, 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

Significantly, accrual does not depend on whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *See Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F.Supp.2d 477, 484 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Here, Plaintiff complains of Defendants' failures to protect [Plaintiff] which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the failure to protect to rise to a constitutional violation, an inmate must demonstrate that she was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant was "deliberately indifferent" to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994); *Bistrian*, 696 F.3d at 367.

In this context, "deliberate indifference" is a subjective standard. *Bistrian*, 696 F.3d at 367–69. The prison official "must actually have known or been aware of the excessive risk to inmate safety" and it is "not sufficient that the official should have known of the risk." *Id.*; *Miller v. Ricci*, No. 11-0859, 2011 WL 1655764, at *10 (D.N.J. Apr. 28, 2011) ("To plead an Eighth Amendment failure to protect claim a plaintiff must plead facts raising a plausible inference of ... the defendants' deliberate indifference to that particular risk of harm").

With those principles in mind, Plaintiff knew of or had reason to know of [Plaintiff's] injuries on July 11 and 13, 2013, the dates of the sexual assaults. According to the Amended Complaint, Plaintiff was very much aware of the serious risk [of harm], and the remaining Defendants were aware of that risk through Plaintiff's evaluations. Additionally, in the case of Defendant Fischer, Plaintiff directly advised Defendant Fischer of the dangerous inmates and their threats to Plaintiff. Finally, Plaintiff was aware that Defendants were deliberately indifferent to that risk when they failed to separate [Plaintiff] from those inmates or otherwise protect [Plaintiff] from harm.

3

Taken together, and as Plaintiff concedes, [Plaintiff] had a complete cause of action as to all . . . claims on July 13, 2013, and the statute of limitations required [Plaintiff] to file a complaint as to those claims on or about July 13, 2015. (ECF No. 9-1, at 6 ("Plaintiff's last sexual assault at Ft Dix was on July 13, 2013 . . . which started the . . . two (2) year limitation period to file the . . . claim.")).

Accordingly, because Plaintiff did not file [the] initial Complaint until December of 2018, the statute of limitations bars these claims and any claims with a two-year statute of limitations that began to accrue prior to December of 2016.

Certain statutes and doctrines may allow the Court to toll the statute of limitations. For example, New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.,* N.J. Stat. Ann. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A:14–22 (detailing tolling because of non-residency of persons liable). New Jersey law also permits "equitable tolling" where an adversary's misconduct induced or tricked a complainant into allowing the filing deadline to pass, or where "in some extraordinary way" someone or something prevented plaintiff from asserting her rights, or where a plaintiff has timely asserted her rights through a defective pleading or in the wrong forum. *See Freeman v. New Jersey,* 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002). However, absent a showing of a defendant's intentional inducement or trickery, the Court should apply the doctrine of equitable tolling sparingly and only where sound legal principles and the interest of justice demand its application. *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrines. *See Lake v. Arnold,* 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where extraordinary circumstances prevent a plaintiff from asserting her claims; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. *Id.* at 370 n. 9.

In the present case, Plaintiff argues that circumstances merit equitable tolling in [this] case. (ECF No. 9-1, at 8). First, Plaintiff refers to [Plaintiff's] history of mental health issues, which include anxiety, depression, and panic attack disorder, as well as [Plaintiff's] trauma from the sexual assaults. (*Id.* at 8–9). Plaintiff does not, however, allege that any of these conditions *prevented* [Plaintiff] from filing a complaint within two years, or how [Plaintiff's] conditions changed, such that [Plaintiff] was then able to file a complaint several years after the expiration of the statute of limitations. *Lake,* 232 F.3d at 370 n.9. Accordingly, without more, the Court declines to equitably toll the statute of limitations period on this ground.

4

>   Next, Plaintiff contends that [Plaintiff] "never knew that [Plaintiff's] rapes were substantiated until October 3, 2017" when [Plaintiff] received copies of [Plaintiff's] psychological records. (ECF No. 9-1, at 9). Plaintiff characterizes this delay, and the refusal to release "the most damaging evidence," as "fraudulent concealment" on the part of the Federal Bureau of Prisons ("FBOP") and FCI Fort Dix. (*Id.* at 5). More specifically, [Plaintiff] alleges that the FBOP's "refusal to provide the entire case file . . . prohibited the . . . [Plaintiff's ability] to file this civil action within the standard [s]tatute of limitations period. (*Id.*).
>
>   The Court rejects Plaintiff's argument. Although the records relating to the disciplinary charges against "inmate C" might be valuable evidence to help prove [Plaintiff's] case, they were not *necessary* to the filing of Plaintiff's initial complaint. *See, e.g., Borntrager v. Zisa*, No. 09-3076, 2011 WL 1211349, at *3 (D.N.J. Mar. 29, 2011) (discussing that a plaintiff must first *allege* facts to state a claim in a complaint, and then later prove those facts at trial). As discussed above, Plaintiff had a complete cause of action on January 13, 2013.
>
>   Knowledge of whether "inmate C" received disciplinary charges or whether he was convicted for the sexual assaults, were not necessary to create Plaintiff's cause of action. Stated differently, Plaintiff's realization that [Plaintiff] may have had a viable claim or evidence to support such a claim, had no impact on when [Plaintiff's] claims began to accrue. (ECF 9-1, at 9); *see Giles*, 542 F. App'x at 123 (stating that accrual does not depend on whether the claimant knew or should have known that the injury constitutes a legal wrong).
>
>   Accordingly, because it is apparent that all of Plaintiff's claims are time-barred as they arose prior to December of 2016, the Court will dismiss such claims as untimely.

(ECF No. 10 at 6-10.)

Following the dismissal of the amended complaint, Plaintiff filed a motion to set aside the dismissal, arguing that the complaint was timely in light of New Jersey's adoption of a statute which revived certain time barred sexual assault related claims. *See* N.J. Stat. Ann. § 2A:14-2b(a) (permitting previously time barred sexual assault related state law claims to be brought within two years of December 2019). On March 2, 2021, Judge Kugler granted that motion provisionally, and appointed counsel for Plaintiff so that the parties could address whether this statutory

5

exception applied to Plaintiff's claims. (ECF No. 14.) Defendants now move to dismiss the amended complaint.

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

In their motion to dismiss, Defendants argue that Plaintiff's *Bivens* claims remain time barred regardless of New Jersey's statutory exception for sexual assault claims as that statute does not affect the limitations period for a *Bivens* action. This Court agrees. As one court in this district recently explained,

> The relevant case [on this issue] is *Owens v. Okure*, 488 U.S. 235 (1989). That plaintiff asserted a federal § 1983 claim arising from an alleged arrest and beating. [Because] § 1983 contains no [explicit] limitation period, . . . federal courts [had to] borrow an appropriate limitations period from state law. The issue presented to the U.S. Supreme Court was a choice between two potentially applicable statutes of limitations: (a) New York's specialized statute of limitations for eight specified intentional torts, or (b) its general statute of limitations for personal-injury claims. *Id.* at 237. The Supreme Court noted the wide variety of limitations periods to be found in state law and invoked the need for uniformity. The Court thus rejected the notion that courts should mix and match, borrowing the state limitations period for the tort most analogous to each of the federal law claims. *Id.* at 243-50. To put it another way, the Supreme Court has abandoned the idea that the federal § 1983 limitation period will differ based on the theory of injury. *Id.* at 240.
>
> Instead, the Supreme Court adopted a predictable, easily administered rule: [a] state's general personal-injury statute of limitations governs all § 1983 claims. *Id.* at 243-50. Although *Owens* addressed only § 1983 claims, the Court has applied its reasoning to other federal claims that resemble personal injury claims. *Reed v. United Transp. Union*, 488 U.S. 319, 334 (1989).
>
> In the three decades since *Owens*, multiple states have extended the limitation period for sexual-assault claims. The federal Courts of Appeals, citing *Owens*, have uniformly held that such specialized limitation periods do not apply to federal claims. Instead, they have continued to apply the applicable state's general personal-injury statute of limitations. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (5th Cir. 2015); *Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 768-79 (7th Cir. 2013); *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579-80 (9th Cir. 2012); *Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993).

*Gavin*, 2021 WL 1050364 at *3-4; *see also T.M. v. City of Union*, No. 21-20268, 2021 WL 5822940, at *4-6 (D.N.J. Dec. 8, 2021) (finding that only general tort statute of limitations

7

applies to federal civil rights claims, special exceptions for state law sexual assault claims do not affect federal civil rights actions). New Jersey's exception to the general tort statute of limitations is thus inapplicable to *Bivens* claims, even where they relate to sexual assault, and Plaintiff's *Bivens* claims remain time barred for the reasons expressed by Judge McNulty in his screening opinion quoted above.

In response, Plaintiff presents several arguments to suggest that the statute of limitations should be equitably tolled in this matter. First, Plaintiff argues that Captain Fitzgerald of Fort Dix "intimidated" Plaintiff into not filing her case. This argument, however, is of no help to Plaintiff. Plaintiff was transferred out of state and far beyond the reach of Captain Fitzgerald a mere two months after the incidents in July 2013, and had the vast majority of the two-year limitations period within which to file a complaint from a place where the captain had no ability to deter or interfere. Plaintiff has thus neither shown a truly extraordinary circumstance nor reasonable diligence – Plaintiff could have, but did not, file any claim during the 22 months after the transfer – sufficient to support equitable tolling as to this argument, and it serves as no basis for tolling of the limitations period. *Lake*, 232 F.3d at 370 n. 9 (equitable tolling requires showing both extraordinary circumstances preventing filing and due diligence); *see also Frasier-Kane v. City of Philadelphia*, 517 F. App'x 104, 106-07 (3d Cir. 2013) (noting that threats and duress from state officials will only amount to an exceptional circumstance warranting tolling in exceedingly rare and oppressive circumstances, and not merely where a defendant or other state actor threatens an individual on occasion).

Plaintiff next reiterates an argument which Judge Kugler previously rejected: that Plaintiff, ignorant of the law, believed that filing could not be commenced without BOP records as to her assailant's disciplinary proceedings, and believed that no filing could be done until the BOP had completed its investigation. Neither Plaintiff's ignorance of the law, nor lack of access to the

8

disciplinary records of "C" warrant equitable tolling. As Judge Kugler explained, the records were not required for Plaintiff to know that Plaintiff had a claim – Plaintiff was aware of the threats that had been made by other inmates, that the prison officials knew of those threats, and that the threats resulted in harm as of July 13, 2013. While the prison records may have been helpful, they were in no way necessary for the filing of a complaint, and lack of access to them does not warrant tolling. Neither Plaintiff's naivete nor ignorance of the law change this fact. *See, e.g., Jackson v. Coleman*, 556 F. Supp. 3d 210, 219 (E.D. Pa. 2021) (a prisoner's "ignorance of the law is not a basis for equitable tolling").

Plaintiff next reiterates the claim that mental health issues impeded the filing of the complaint, arguing that once Plaintiff became cognizant enough to be aware of the rights which had been impugned, Plaintiff filed remedy claims and thereafter a civil complaint. Judge Kugler previously rejected this argument as Plaintiff failed to show that mental health issues had actually prevented Plaintiff from filing suit for the years between 2013 and 2017, and this Court agrees that Plaintiff has failed to show that mental health issues truly prevented filing. Although Plaintiff attempts to characterize the state of Plaintiff's mental health as worse between 2013 and 2016 than in 2017 when the initial remedies were filed, Plaintiff's submitted records do not support that contention.

Although Plaintiff's records do support the assertion that Plaintiff did experience mental trauma as a result of the July 2013 incidents, those same records do not support Plaintiff's contention that Plaintiff spent her limitations period in a completely dissociated state, incapable of filing. Records indicate that Plaintiff told psychiatric staff that she was "feeling good" in January 2014 despite the assault and related trauma. (ECF No. 1-7 at 4.) In December 2014, Plaintiff further was found to be "alert and oriented" with "no behavioral abnormalities" and thought processes which were "organized, coherent, and goal-directed." (*Id.* at 5.) June 2016 records

9

likewise indicate that while Plaintiff did continue to have anxiety, Plaintiff was otherwise not experiencing depression or other psychosis at that time and was not in need of non-follow up mental health treatment. (*Id.* at 6.) Despite mental health improvements beginning in April 2016, Plaintiff's records indicate that in 2017 Plaintiff was if anything experiencing worsening, rather than improving symptoms, with increasing anxiety and depression. (*Id.* at 7.) Indeed, shortly before the filing of Plaintiff's initial complaint, Plaintiff told one prison doctor that Plaintiff felt "no better now than years ago." (*Id.* at 9.) taken together, these records, which Plaintiff provided with the initial complaint, do not support the assertion that Plaintiff's mental health state and recovery were tied to the timing of the filing of the complaint. The records instead indicate that Plaintiff understandably experienced mental trauma and anxiety as a result of the rapes, but that these symptoms improved and worsened at variable points between 2013 and the filing of this matter, and that the timing of Plaintiff's filing of administrative grievances in 2017 and complaint in 2018 were not necessarily related to any marked improvement in mental health. The records instead indicate that, if anything, Plaintiff's mental health was deteriorating between 2017 and 2018. Plaintiff has thus failed to show that mental health issues truly prevented the filing of a complaint, and those issues therefore do not warrant equitable tolling, especially as Plaintiff has failed to show reasonable diligence throughout the limitations period.

As this Court has considered Plaintiff's tolling arguments and finds that Plaintiff has failed to show any basis for the tolling of the limitations period, this Court finds that Plaintiff's civil rights claims are well and truly time barred. Plaintiff's civil rights claims are therefore dismissed with prejudice. Because Plaintiff's *Bivens* claims are clearly time barred, this Court need not and does not address Defendants' argument that Plaintiff has failed to state a plausible claim for relief and that *Bivens* should not be extended to cover the circumstances of Plaintiff's claims.

Finally, defendants argue that Plaintiff's Administrative Procedure Act claims should be dismissed as the APA does not permit claims for money damages – the chief relief Plaintiff seeks. Defendants also argue that the denial of surgery or electrolysis medical related APA claims are not reviewable. As to the first point, this Court agrees that money damages are not available under the APA and that claims under the act seeking such relief must be dismissed. *See Qiu v. Chertoff*, 486 F. Supp. 2d 412, 421 (D.N.J. 2007) ("The APA explicitly precludes money damages" claims); *see also Dep't of the Army v. Blue Fox*, 525 U.S. 255 (1999) (money damages unavailable under the APA). Plaintiff's APA claim seeking damages is therefore dismissed with prejudice.

Even were this Court to construe Plaintiff's APA claim to be seeking review of the denial of medical care including surgery and electrolysis in an attempt to compel such care[1], Defendants argue that this decision does not constitute reviewable agency action as resort to the APA is not appropriate where other avenues for relief are available. This Court agrees. *See, e.g., Eads v. Fed. Bureau of Prisons*, No. 2021 WL 1085459, at *9 (D.N.J. Mar. 22, 2021) (APA only permits review of "final agency action[s] for which there is no other adequate remedy in a court," BOP's decisions as to ongoing medical care are not final action and are not reviewable under the APA, and APA review also inappropriate as other relief, including an FTCA or civil rights claim as to denial of medical care is available). The denial of Plaintiff's medical request in this matter clearly was not final agency action subject to review, the denial in question clearly refers Plaintiff to make medical requests to the health department of the prison in which Plaintiff is now housed, rather than through the grievance Plaintiff filed. (*See* ECF No. 1-14 at 2.) It is clear that this is not a final decision as to Plaintiff's request for surgery or electrolysis. Therefore, the denial in question is clearly not a

---

[1] In the amended complaint, Plaintiff does not explicitly seek such relief and instead appears to be seeking money damages and injunctive relief completely unrelated to any APA claim. (*See* ECF No. 9-1 at 19-20.)

11

reviewable final agency action. Simply stated, Plaintiff may yet request further medical care, including the surgery Plaintiff wishes to receive, from her current facility's medical staff. Plaintiff's medical care related claims are thus not reviewable under the APA at this time, and must be dismissed as such. *Eads*, 2021 WL 1085459 at *9. Plaintiff's APA claim must therefore be dismissed. Defendants' motion to dismiss will therefore be granted, and Plaintiff's amended complaint (ECF No. 9-1) dismissed in its entirety.

## IV.     CONCLUSION

In conclusion, Defendants' motion (ECF No. 47) is **GRANTED**, and Plaintiff's amended complaint (ECF No. 9-1) is **DISMISSED** in its entirety. An appropriate order follows.

*[signature]*
Hon. Karen M. Williams,
United States District Judge